IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANN P. SHIVELY, in her capacity as presumptive personal representative on behalf of all beneficiaries of the estate of Michael Jay Shively, <br><br>       **Plaintiff,** <br> v. <br><br> UTAH VALLEY UNIVERSITY, ASTRID S. TUMINEZ, KAREN CLEMES, and SARA J. FLOOD, <br><br>       **Defendants.** | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 2:20-cv-119 <br><br> District Judge Dee Benson |

Before the court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The motion has been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. The court now elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

## BACKGROUND

The following facts are undisputed in the pleadings. Dr. Michael Jay Shively ("Shively") was a professor at Utah Valley University (UVU) who held the position of Human Anatomy

Program Coordinator from 1993 until his death in 2019.  In early 2019, UVU received a number of complaints about Shively, including allegations concerning his grading practices and his interactions with colleagues.  Plaintiff alleges that Defendant Flood intentionally spread false accusations about Shively and solicited student complaints against him.  Plaintiff further alleges that Defendants Tuminez, Clemes, and UVU knew or should have known that the accusations were false.  UVU responded to the accusations by placing Shively on paid suspension on March 25, 2019 and initiating an independent investigation.  In June and early July 2019, counsel for Shively asked UVU to disclose the accusations against Shively and warned Defendants that Shively was suffering because of the prolonged investigation.  Shively suffered from severe depression during his suspension.  On July 11, 2019, Shively was allowed to read a preliminary investigation report.  In the final report, completed July 31, 2019, the investigator found that some accusations against Shively were unsupported but ultimately determined that Shively had violated UVU's Classroom Instruction and Management Policy as well as its Faculty Rights and Professional Responsibilities Policy.  Shively died by suicide on August 19, 2019.  On September 27, 2019, Plaintiff informed Defendants of her intent to file suit.  Plaintiff filed the instant action on February 21, 2020 alleging civil rights violations, wrongful death, breach of implied contract, negligent infliction of emotional distress, and civil conspiracy.  Defendants moved for judgment on the pleadings on April 1, 2020.

## DISCUSSION

Courts evaluate a 12(c) motion "using the same standard that applies to a Rule 12(b)(6) motion."  *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).  That standard requires that the

court "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Colony Insurance*, 698 F.3d at 1228.  The claims alleged must be facially plausible, meaning that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Judgment on the pleadings is granted when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park University Enterprises, Inc. v. American Cas. Co. of Reading, PA*, 442 F.3d 1239 (10th Cir. 2006).

**Section 1983 Due Process**

Defendants' motion first addresses Plaintiff's due process claims against Tuminez and Clemes under Section 1983 of the Civil Rights Act.  As a threshold matter, qualified immunity "protects public employees from both liability and from the burdens of litigation arising from their exercise of discretion." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (internal citations and quotation marks omitted).  Tuminez and Clemes were public employees acting in their official capacities when the relevant events occurred.  They are therefore entitled to raise the defense of qualified immunity.  "When a defendant raises the qualified-immunity defense, the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (internal citations and quotation marks omitted).  At this stage, then, the complaint must plausibly claim that Tuminez and Clemes violated Shively's clearly established due process rights.

"[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest." *Hyde*

*Part Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  Defendants argue that

Shively's suspension did not deprive him of a protectible property interest because the Tenth

Circuit has declared that "[s]uspension with pay does not raise due process concerns."  *Hicks v.*

*City of Watonga, Okl.*, 942 F.2d 737, 746 n. 4 (10th Cir. 1991).  Plaintiff calls this statement

"dictum" because it appears in a footnote, but that footnote announces a legal conclusion about

the matter before the court, not a hypothetical dispute.  *Id.* ("[N]o property interest was infringed

at Mr. Hicks' first round of hearings . . . .").  The Tenth Circuit also previously held that "[w]hile

suspension of a public employee without pay may infringe upon a property right," a plaintiff's

"suspension with pay did not invade any recognized property interest."  *Pitts v. Bd. of Educ. of*

*U.S.D. 305, Salina, Kansas*, 869 F.2d 555, 556 (10th Cir. 1989).  Plaintiff distinguishes the facts

of those cases from those of the instant case, but differences in the individual cases do not

invalidate the Tenth Circuit's generally applicable rule that "[s]uspension with pay does not raise

due process concerns."  *Hicks*, 942 F.2d at 747 n. 4.  Plaintiff's suggestions that the law is not

"well-settled" or that "some jurisdictions have explicitly noted the possibility that paid

suspensions . . . implicate due process" (Dkt. No. 19 at 7), even if true, do not satisfy Plaintiff's

burden at this stage.  To overcome the qualified immunity defense raised by Tuminez and

Clemes, Plaintiff must allege that they violated not a "possible" property interest, but a "clearly

established" property interest.

Plaintiff next argues that even if suspension without pay does not usually implicate due

process, "Shively's case is not usual."  (Dkt. No. 19 at 8 (emphasis removed).)  Plaintiff argues

that Shively suffered emotional and mental anguish, reputational harm, and a reduction in his

ability to succeed at UVU or in other potential employment settings.  (*Id.*) Yet to properly plead

a Section 1983 due process claim against a defense of qualified immunity, Plaintiff must allege

more than harm—she must allege the deprivation of a protectible property interest, and that property right must be clearly established. *See Cummings*, 913 F.3d at 1239. The allegation that Shively's suspension without pay was unusually harmful does not establish that it was a deprivation of clearly established property interest.

Finally, Plaintiff argues that Shively had a property interest, created by his employment contract (UVU Policy 648), "in not being suspended unless he was charged with a serious offense affecting the public interest." (Dkt. No. 2 ¶ 177.) Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Even where an employer's action would typically not constitute a deprivation of a protectible property interest, an employee "can point to a specific contractual provision and surrounding circumstances establishing a property interest." *Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003).

UVU Policy 648 reads, "In the event that a faculty member is charged with a serious offense affecting the public interest, the President may suspend the faculty member from professional duties . . . ." (Dkt. No. 2 Ex. 3 at 8.) Leaving aside the question of whether Shively's suspension violated this policy, the policy itself does not create a clearly established property interest. In *Hulen v. Yates*, the court determined that a professor had a property interest in his departmental assignment based on a contract term that protected him from transfers to other positions unless certain conditions were met. 322 F.3d at 1243. But here, Shively's claimed property interest "in not being suspended" is not supported by the language of UVU Policy 648. The language in the policy is permissive ("the President may suspend") rather than restrictive ("the President shall not suspend unless," e.g.). Furthermore, the suspension was with

pay and did not involve any permanent change in Shively's employment status while the investigation was under way.  And even if the policy could be construed to create a property interest in avoiding suspension, the language does not establish that interest clearly enough to overcome a claim of qualified immunity.  The policy does not, then, create a clearly established property interest "in not being suspended."

### Breach of Implied Contract

Defendants next address Plaintiff's claim for breach of implied contract against UVU. Contract law is state law, and damages are an essential element of any Utah contract claim.  *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).  A typical expectation damages award "attempts to place the aggrieved party in the same economic position the party would have been in if the contract was not breached."  *Christensen & Jensen, P.C. v. Barrett and Daines*, 194 P.3d 931, 938 (Utah 2008).  In some cases, where expectation damages are not appropriate, reliance damages are used "to return the plaintiff to the position the plaintiff enjoyed before relying on the promise."  *Richards v. Brown*, 222 P.3d 69, 83 (Utah App. 2009).

Simply put, Plaintiff has not alleged damages supporting a breach of contract claim. Because Shively's suspension was paid, he was in "the same economic position" he would have been absent any alleged breach.  To support her damages claim, Plaintiff argues that "Shively relied on UVU's implied contract and decided to remain at UVU, even though, given his prestigious accolades, he could have received higher earnings elsewhere," contending that "reliance damages" can be calculated by taking the difference between Shively's UVU salary and some prospective higher salary.  (Dkt. No. 19 at 13.)  But neither expectation damages nor reliance damages entitle a plaintiff to the speculative cost of forgoing other employment opportunities.  Expectation damages would provide Shively the benefit of the bargain: his UVU

salary, which he continued to receive during his paid suspension.  If reliance damages were applicable here, the damages amount would be limited to any actual loss (not opportunity costs) incurred by Shively in reliance on promises from UVU.  Plaintiff has not alleged an actual loss incurred in reliance on UVU's promises, and Shively did not experience a loss of salary relative to his expectations under his contract with UVU.  Plaintiff has therefore failed to allege damages supporting her claim for breach of implied contract.

### Emotional Distress and Wrongful Death

Plaintiff's claims for negligent infliction of emotional distress and wrongful death sound in state tort law and may be restricted by state statutes.  The Governmental Immunity Act of Utah ("GIA") "governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority."  Utah Code Ann. § 63-G-7-101(2).  Under that statute, governmental entities and employees "retain immunity from suit unless that immunity has been expressly waived in this chapter."  *Id.* § 63G-7-101(3).  Immunity is waived as to "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment," subject to a long list of instances in which immunity is retained.  *Id.* § 63G-7-301(2)(i), 201(4).  The instances in which immunity is retained include whenever the injury arises out of "the exercise or performance, or the failure to exercise or perform, a discretionary function," "interference with contract rights," "infliction of mental anguish," or "a misrepresentation by an employee whether or not the misrepresentation is negligent or intentional,"  *Id.* § 63G-7-201(4).  The "structure of the Utah Governmental Immunity Act . . . focuses on the conduct or situation out of which the injury arose, not on the theory of liability or

the type of negligence alleged." *Ledfors v. Emery Cty. Sch. Dist.*, 849 P.2d 1162, 1166 (Utah 1993).

Defendants, a public entity and public employees acting within the scope of their employment, are entitled to the immunities contained in the GIA. Defendants argue that Plaintiff's claims for negligent infliction of emotional distress and wrongful death all stem from a claim of "infliction of mental anguish" by state employees, an instance in which government immunity is retained. Plaintiff contends that "infliction of mental anguish" in the statute means something far more limited, such as temporary fear or suffering. The Utah Supreme Court has seemingly not interpreted "mental anguish" in this context, so we must determine whether the retention of immunity for "infliction of mental anguish" immunizes public entities and employees from claims of negligent infliction of emotional distress. Plaintiff points to examples in which "mental anguish" has been used by courts to describe a wide variety of experiences, included misery associated with constant foot pain, the apprehension of imminent death, embarrassment, and the anxiety of waiting to be told whether a family member dies. The breadth of these examples alone, however, argues against Plaintiff's contention that "mental anguish" has a specific, discrete definition separate from emotional distress. Furthermore, while Plaintiff points to the *Black's Law Dictionary* definition of mental anguish as "a highly unpleasant mental reaction," she fails to mention that this is one of several definitions found not under "mental anguish," but under "emotional distress." *Distress, Black's Law Dictionary* (10th ed. 2014). The entry for "mental anguish" simply directs the reader to "emotional distress." *Mental Anguish, Black's Law Dictionary* (10th ed. 2014). The "emotional distress" entry contains an excerpt from the Second Restatement of Torts that reads, "Emotional distress passes under various names, such as mental suffering, *mental anguish*, mental or nervous shock, or the like."

*Distress, Black's Law Dictionary* (10th ed. 2014), *quoting* Restatement (Second) of Torts § 46 cmt. j (1965) (emphasis added). The plain meaning of "mental anguish" and its interchangeable use with "emotional distress" demonstrate that a claim for negligent infliction of emotional distress against a public entity or employee is barred by the GIA.

Next, this court must determine whether Plaintiff's wrongful death claim "arises out of or in connection with, or results from . . . infliction of mental anguish." Utah Code Ann. § 63G-7-201(4). Evaluating "the conduct or situation out of which the injury arose" and not "the theory of liability or the type of negligence alleged," *Ledfors,* 849 P.2d at 1166, we must conclude that it does. The only theory under which Plaintiff can claim that Defendants are liable for Shively's wrongful death is one in which they inflicted such severe emotional distress upon him that he was ultimately driven to suicide. There is no other theory given the facts alleged that might make Defendants liable for Shively's death. Because the claim therefore "arises out of . . . or results from . . . infliction of mental anguish," Defendants retain immunity under the GIA from Plaintiff's wrongful death claim.

**Civil Conspiracy**

Plaintiff argues that Defendants colluded to deprive Shively of his job in a conspiracy, "the details of which will be made available during discovery." Dkt. No. 2 ¶ 263. "In order to plead a claim for civil conspiracy, a complaint must allege sufficient facts to establish (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Harvey v. Ute Indian Tribe of Uinta and Ouray Reservation*, 416 P.3d 401, 425 (Utah 2017) (internal quotations omitted). The complaint alleges that Tuminez, Clemes, and Flood combined to accomplish the object of replacing Shively with Flood as

director of the Human Anatomy program.  Yet the complaint contains few, if any, allegations
supporting an inference that these individuals had a meeting of the minds on that objective.  It
offers, as evidence of the conspiracy, the same long list of alleged abuses supporting its other
claims: pursuit of false allegations, violations of university policy, undue focus on Shively's use
of the Canvas tool, insufficient investigation of the allegations, etc.  (Dkt. No 2 ¶¶ 264-272.)  It is
certainly true that "[d]irect evidence of a conspiracy is rarely available, and the existence of a
conspiracy must usually be inferred from the circumstances." *Fisher v. Shamburg*, 624 F.2d 156,
162 (10th Cir.1980) (citing *Loew's, Inc. v. Cinema Amusements*, 210 F.2d 86, 93 (10th Cir.
1954)).  But the complaint must contain "more than mere conclusory allegations" to establish a
conspiracy claim.  *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994).
Plaintiff's allegations of mistreatment and abuse by Defendants, absent allegations of
communications or coordination between the alleged conspirators, do not plausibly support the
inference that defendants conspired with the aim of removing Shively from his post and
replacing him with Flood.


## CONCLUSION

The complaint alleges seven claims against Defendants.  The first and second, alleging
violations of due process by Tuminez and Clemes, fail to overcome Defendants' defense of
qualified immunity because the complaint does not identify a clearly established property
interest.  The third, fifth, and sixth, alleging wrongful death and negligent infliction of emotional
distress, are barred by the Governmental Immunity Act of Utah.  The fourth, alleging breach of
implied contract, fails because the complaint does not allege cognizable damages stemming from

any alleged breach.  And the seventh claim, alleging a civil conspiracy, lacks sufficient allegations to support an inference that there was a meeting of the minds to remove Shively.

      For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED.

      Entered this 20th day of July, 2020.


BY THE COURT

_____
United States District Judge Dee Benson